UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CC/DEVAS (MAURITIUS) LTD., *et al.*, <br><br> *Petitioners,* <br><br> v. <br><br> **REPUBLIC OF INDIA,** <br><br> *Respondent.* | Case No. 1:21-cv-106-RCL |

## MEMORANDUM OPINION

Petitioners CC/Devas (Mauritius) Ltd. ("CC/Devas"), Telcom Devas Mauritius Limited ("Telcom Devas"), and Devas Employees Mauritius Private Limited ("DEMPL") have petitioned this Court to confirm and enforce a roughly $111.3 million arbitral award against the respondent, the Republic of India ("India"). *See generally* Pet., ECF No. 1. At the same time, India has filed lawsuits in the Netherlands to set aside this award. *See* Claassens & Verkerk Decl. ¶¶ 3–5, ECF No. 35. India moved to dismiss this petition or, alternatively, to stay these proceedings until the conclusion of the Dutch set-aside proceedings. Mot. to Dismiss, ECF No. 15; Mot. to Stay, ECF No. 14. Petitioners challenged both motions in separate responses. *See* Pet'rs' Resp. to Resp't's Mot. to Stay ("Stay Resp."), ECF No. 24; Pet'rs' Resp. to Resp't's Mot. to Dismiss ("MTD Resp."), ECF No. 23. India filed separate replies for both motions. Reply Mem. in Supp. of Mot. to Stay ("Stay Reply"), ECF No. 31; Reply Mem. in Supp. of Mot. to Dismiss ("MTD Reply"), ECF No. 32. After considering the parties' briefing, relevant exhibits, and applicable law, the Court finds that India has demonstrated a pressing need for a temporary stay. India's motion to stay will be **GRANTED**.

I.   BACKGROUND

This case involves a contract dispute between Devas Multimedia Private Limited ("Devas") and Antrix Corporation Limited ("Antrix"), two Indian companies. Devas sought to provide broadband wireless access and audiovisual services across India's rural areas through satellite communications. Pet. ¶¶ 2–4. In January 2005, Devas entered an agreement with Antrix (the "Devas–Antrix Agreement" or the "Agreement") to pursue this goal. *Id.* ¶¶ 20, 22. Antrix is wholly owned by the Indian government—it serves as the "marketing arm" of the Indian Department of Space ("DOS") and as a commercial entity within the Indian Space Research Organization ("ISRO"). *Id.* ¶¶ 20–21. Antrix agreed to build, operate, and launch two ISRO satellites and to lease Devas a portion of the "S-band" of the electromagnetic spectrum to use for broadcasting. *Id.* ¶ 22. Between 2005 and 2011, Devas "assembled a world class team of experts" in satellite communications and conducted trials in India, Germany, and China. *Id.* ¶ 4. Petitioners in this action—CC/Devas, Telcom Devas, and DEMPL[1]—collectively injected millions of dollars into Devas during this period to assist with satellite reservation fees and other business expenses. *Id.* ¶ 23.

But the momentum behind the Devas–Antrix Agreement came to a screeching halt. In February 2011, the Indian Cabinet Committee on Security ("CCS") announced the termination of the Agreement. *Id.* ¶ 32. The CCS reasoned that the Indian government could no longer lease S-band frequencies to Devas because of "increased demand" in that range "for national needs." *Id.* Antrix terminated the Agreement a few days later. *Id.* Without the Agreement, Devas's business and petitioners' investments "[were] completely destroyed." *Id.* ¶ 33.

---

[1] Each petitioner is an entity incorporated in Mauritius, though CC/Devas and Telcom Devas are affiliated with two American-based venture-capital firms. Pet. ¶¶ 14, 34.

Facing the loss of their investments, petitioners commenced international arbitration. They alleged violations of a bilateral investment treaty between Mauritius and India (the "Mauritius–India Treaty").[2] On July 25, 2016, a three-member tribunal of the Permanent Court of Arbitration in The Hague (the "Tribunal") issued a decision on the merits of petitioners' arbitration (the "Merits Award"). Merits Award, ECF No. 1-5. The Tribunal held that India breached the Mauritius–India Treaty by annulling the Devas–Antrix Agreement. *Id.* ¶ 48. Next came the quantum of damages. The parties submitted additional briefing and evidence on damages during 2017 and 2018, culminating in a days-long hearing before the Tribunal. *Id.* ¶¶ 51–52. On October 13, 2020, the Tribunal issued a decision (the "Quantum Award") finding that petitioners were entitled to $111,296,000 in damages, pre-judgment interest, post-judgment interest, and attorneys' fees. *Id.* ¶¶ 5, 53–55; Quantum Award, ECF No. 1-3.[3]

But petitioners' successes before the Tribunal did not end this controversy. India's challenge to the Merits Award—in which India is requesting a complete set-aside—is currently on appeal to the Dutch Supreme Court. Claassens & Verkerk Decl. ¶ 5. And India has challenged the Quantum Award by filing suit in The Hague District Court. *Id.* ¶ 4. The Court is not aware of a final decision in either Dutch proceeding. Devas itself is now subject to winding-up proceedings and litigation in India about allegedly fraudulent conduct surrounding the Devas–Antrix

---

[2] *See* Agreement Between the Republic of India and the Republic of Mauritius for the Promotion and Reciprocal Protection of Investments, *in* Investment Promotion and Protection Treaties: India/Mauritius (Int'l Ctr. for Settlement of Investment Disps. 2010), ECF No. 1-8.

[3] Separately, Devas itself commenced arbitration against Antrix under the arbitration clause in their Agreement. Pet. ¶ 66. The International Chamber of Commerce ("ICC") heard this arbitration and, on September 14, 2015, awarded Devas $562,500,000 in damages for breach of contract (the "ICC Award"). *Id.* The ICC Award did not affect the Tribunal's holding toward petitioners, though the Tribunal mandated that the petitioners make efforts to avoid receiving double compensation. *Id.* (quoting Merits Award ¶¶ 166; Quantum Award ¶ 663(k)).

Devas then filed suit in the Western District of Washington to enforce the ICC Award. *Devas Multimedia Priv. Ltd. v. Antrix Corp. Ltd.*, No. 2:18-cv-1360 (TSZ), 2020 WL 5569782 (W.D. Wash. Sept. 17, 2020). In November 2020, that court entered judgment against Antrix for roughly $1.29 billion. Judgment, *id.*, ECF No. 52. That decision is on appeal at the Ninth Circuit. *Devas Multimedia Priv. Ltd. v. Antrix Corp. Ltd.*, No. 20-36024 (9th Cir. Feb. 16, 2022).

Agreement. *See* Mot. to Stay 13–17; *see generally* Dutt Decl., ECF No. 23-29; Jayasimha Decl., ECF No. 36.

These pending lawsuits have not stopped petitioners from trying to enforce their initial victory. They have filed lawsuits in Australia, Belgium, England, France, Luxembourg, and the Southern District of New York praying for confirmation of the Merits and Quantum Awards. *See* Compl. ¶ 41, *CC/Devas (Mauritius) Ltd. v. Air India, Ltd.*, No. 1:21-cv-5601 (PGG) (S.D.N.Y. June 28, 2021), ECF No. 1.[4] On January 13, 2021, that worldwide campaign reached the District of Columbia. *See* Pet. ¶ 9. After several months' delay (while petitioners served India with process), India filed a motion to stay and a motion to dismiss. *See* Mot. to Stay; Mot. to Dismiss. These motions are now ripe.

## II.   LEGAL STANDARD

Part of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–08, codifies the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention," or the "Convention"). Art. I, June 10, 1958, 21 U.S.T. 2517. These provisions require a district court to confirm "an arbitral award falling under the Convention" unless "it finds one of the grounds for refusal or deferral" specified in the Convention. 9 U.S.C. § 207. A district court carries "little discretion in refusing or deferring enforcement of foreign arbitral awards" except for those grounds "explicitly set forth in Article V of the Convention." *Belize Soc. Dev't v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007)).

---

[4] Last month, Judge Paul G. Gardephe of the Southern District of New York exercised discretion to stay the confirmation proceedings before him pending this Court's decision. *CC/Devas (Mauritius) Ltd. v. Air India, Ltd.*, No. 1:21-cv-5601 (PGG), 2022 WL 355759 (S.D.N.Y. Feb. 4, 2022).

4

Should the Convention apply, "a court may adjourn enforcement proceedings only on the grounds explicitly set forth" in the Convention. *Id.* (citation omitted). The Convention permits a district court to stay proceedings if "an application for the setting aside or suspension of the award has been made to the competent authority." New York Convention art. VI. But a stay "should not be lightly granted," for doing so may "impede[] the goals of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation." *Gretton Ltd. v. Republic of Uzbekistan*, No. 1:18-cv-1755 (JEB), 2019 WL 464793, at *2 (D.D.C. Feb. 6, 2019) (quoting *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 317 (2d Cir. 1998)).

### III. DISCUSSION

India moves this Court to stay these proceedings until the related litigation in the Netherlands and India has concluded. The Court agrees as to the Dutch proceedings. First, the Court will explain why it may grant a stay without considering India's sovereign immunity. Second, the Court will detail why this dispute should be stayed pending resolution of the Dutch proceedings. Finally, the Court will discuss why it will not require India to post security. Because a stay would promote judicial economy, respect international comity, and prevent hardship to India, the Court will **GRANT** India's motion and temporarily stay this case.

#### A. The Court May Grant A Stay Before Deciding Its Jurisdiction

India claims that it has not waived its sovereign immunity, which would divest this Court of jurisdiction over this dispute. *See* Mot. to Dismiss 29–32. A court usually must evaluate its jurisdiction before reaching the merits of a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). But a court "may address certain nonjurisdictional, threshold issues before examining jurisdictional questions." *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 513 (2018). For "[j]urisdiction is vital only if the court proposes to issue a judgment

5

on the merits." *Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia*, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (quoting *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Co.*, 549 U.S. 422, 431 (2007)).

Analyzing the propriety of a stay "involves no question relating to the merits of the underlying dispute." *Gretton*, 2019 WL 464793, at *3. Accordingly, courts in this district have held that staying a dispute about a foreign arbitral award is "the type of threshold, non-merits, nonjurisdictional question" that a court may decide before addressing its own jurisdiction. *Cef Energia, B.V. v. Italian Republic*, No. 1:19-cv-3443 (KBJ), 2020 WL 4219786, at *4 (D.D.C. July 23, 2020); *see also, e.g.*, *Novenergia II – Energy & Env't (SCA) v. Kingdom of Spain*, No. 1:18-cv-1148 (TSC), 2020 WL 417794, at *2 (D.D.C. Jan. 27, 2020); *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, 397 F. Supp. 3d 34, 38–39 (D.D.C. 2019). The Court will follow this practice and turn to India's motion to stay before assessing jurisdictional issues.

### B. The Court Will Stay The Case In Light Of The Dutch Set-Aside Proceedings

To begin with, the Court will consider a stay only as to the ongoing litigation in the Netherlands. The proceedings in India involve allegations of fraud in the Devas–Antrix Agreement and the disposition of Devas as it winds up its business. *See* Jayasimha Decl. ¶¶ 7, 15. Petitioners have explained that the Indian court in these proceedings "lacks power to render a judgment either enforcing or setting aside an arbitral award" and that "[t]he Indian Supreme Court does not permit a re-examination of an arbitral tribunal's jurisdictional decisions." Dutt Decl. ¶ 21. India has not challenged this interpretation in its briefing. *See* Mot. to Stay; Stay Reply; Jayasimha Decl. Though the parties vigorously dispute the purpose of the Indian proceedings— whether they serve to harass petitioners or represent a proper investigation into fraudulent

6

conduct—those proceedings present different issues involving a different party. The Court will therefore look only to the propriety of a stay as to the Dutch set-aside proceedings.

The parties dispute the proper standard to apply to India's motion to stay. India asserts that the Court should "exercise its inherent power to stay proceedings during parallel litigation in another forum." Mot. to Stay 5 & n.3. Petitioners argue that the Court must apply the "non-exclusive factors" listed in *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.* to determine whether a stay under the New York Convention is appropriate. Stay Resp. 14–15. The Court will decide this case under its own inherent power. Because "the Court's own jurisdiction has yet to be established," *Cef Energia*, 2020 WL 4219786 at *4 (citations omitted), the Court is not in a position to issue a stay under the Convention. Nonetheless, the Court will consider the *Europcar* factors to inform its decision. *See id.*

### i. The Court Will Stay The Case Under Its Inherent Powers

A district court "possesses inherent powers" stemming from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). The ability to stay litigation "is incidental to" these inherent powers. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). So, "[w]hen arbitration between the parties is required or ongoing, the court 'may order a stay of the judicial proceedings pending completion of the arbitration process.'" *Hulley Enters. Ltd. v. Russian Fed'n* (*Hulley II*), 502 F. Supp. 3d 144, 152 (D.D.C. 2020) (quoting *Bledsoe v. Crowley*, 849 F.2d 639, 645 (D.C. Cir. 1988)).

A court exercising its power to stay a case must "'weigh competing interests and maintain an even balance,' . . . between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev't*, 668 F.3d at 733–34 (quoting *Landis*, 299 U.S. at 254–55, 259).

7

The party seeking the stay bears the burden of proving any "hardship or inequity" that would result if the litigation continued unabated "if there is even a fair possibility that the stay ... will work damage to [someone] else." *Hulley II*, 502 F. Supp. 3d at 152 (quoting *Landis*, 299 U.S. at 255). But this power comes with limits. A district court "abuses its discretion in ordering a stay 'of indefinite duration in the absence of a pressing need.'" *Belize Soc. Dev't*, 668 F.3d at 731–32 (quoting *Landis*, 299 U.S. at 255). The Court now turns to weighing the "competing interests" of judicial economy and potential hardship. *Hulley II*, 502 F. Supp. 3d at 152 (quoting *Landis*, 299 U.S. at 244–45).

Staying these proceedings would promote judicial economy. Dutch courts might annul the Merits and Quantum Awards. Claassens & Verkerk Decl. ¶¶ 15–16. When an "arbitration award was lawfully nullified by the country in which the award was made," a party has "no cause of action in the United States to seek enforcement of the award under either the FAA or the New York Convention." *TermoRio*, 487 F.3d at 930. If India succeeds in the Dutch proceedings, petitioners will lack a cause of action to enforce their award. *See Hulley Enters. Ltd. v. Russian Fed'n (Hulley I)*, 211 F. Supp. 3d 269, 282 (D.D.C. 2016). Issuing a stay might delay this particular dispute. But any delay "would still likely be shorter than the possible delay that would occur if this Court were to confirm the award and the [foreign court] were to then set it aside." *Masdar Solar*, 397 F. Supp. 3d at 39 (citation omitted); *see also TermoRio*, 487 F.3d at 936 (refusing to enforce an arbitration award that had been vacated "by a competent authority in the [s]tate in which the award was made"). At the least, decisions in the Dutch proceedings "may affect this Court's determinations ... by virtue of the persuasive value" of their reasoning. *Hulley I*, 211 F. Supp. 3d at 284.

A balance of the hardships also weighs in favor of a stay. Petitioners claim two types of hardship. First, petitioners make a general assertion that a stay would needlessly prolong these ten-year-old proceedings, thereby undermining the goal of arbitration to avoid protracted and expensive litigation. Stay Resp. 21–22. Second, petitioners allude to a grand conspiracy by India—that India will "concoct additional schemes to attack" petitioners and avoid enforcement. *Id.* at 19–20. Neither of these concerns convinces the Court. True, the underlying arbitration has lasted more than ten years. But the Tribunal issued the Quantum Award on October 13, 2020. *See* Quantum Award. India would "undeniably be burdened" by challenging the validity of the awards in separate forums and, if the Dutch courts later set the awards aside, "having to recover assets seized" as a result of this Court's confirmation. *Masdar Solar*, 397 F. Supp. 3d at 40.[5]

In short, the facts before the Court merit staying the case until the Dutch proceedings conclude. The Court is aware of petitioners' concerns that a stay would unduly delay these decade-long proceedings. But this dispute presents "complex issues that must be determined prior to enforcing the awards." *Cef Energia*, 2020 WL 4219786, at *6. The danger of a potential set-aside, the difficulty of determining matters of foreign law currently being litigated in foreign courts, and the hardship to India to litigate those matters simultaneously suggest that the Court should exercise its inherent power to stay these proceedings. The Court will do so.

---

[5] Petitioners also argue that this Court should deny a stay in light of an "order of exequatur" issued by The Hague District Court. Stay Resp. 1. This exequatur order apparently "permits [p]etitioners to fully enforce the Quantum Award against Indian property in the Netherlands" and is not affected "by India's ongoing appeal or its attempt to set aside the Quantum Award." Champion Decl. ¶ 7, ECF No. 23-2. But India's Dutch attorneys attest that the exequatur order "does not prejudice the subsequent analysis" of any court in the set-aside proceedings. Claassens & Verkerk Decl. ¶ 18. Since the Court's analysis focuses on the existence of those set-aside proceedings, the exequatur order does not influence its decision.

*ii. The* Europcar *Factors Weigh In Favor Of A Stay*

Petitioners assert that, instead of considering a stay under the Court's inherent powers, the Court must refer to the New York Convention's stay provisions. *See* Stay Resp. 14–15. Under the New York Convention, "a district court may, 'if it considers it proper,' adjourn—that is, impose a stay of—confirmation proceedings if an application to vacate the award has been made in another jurisdiction." *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 879 (D.C. Cir. 2021) (quoting New York Convention art. VI). The Court "has not ruled on its jurisdiction in this case," so it is "not in a position to issue a stay pursuant to the New York Convention." *Hulley II*, 502 F. Supp. 3d at 153 (quoting *Hulley I*, 211 F. Supp. 3d at 286). But the considerations used when assessing stays under the New York Convention "are nonetheless instructive" to the Court's analysis. *Id.*

Courts in this District refer to the factors enumerated in *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, when discussing whether a stay is warranted under the New York Convention. *See, e.g., Hulley II*, 502 F. Supp. 3d at 153; *Cef Energia*, 2020 WL 4219786, at *6. Those factors are:

> (1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;
>
> (2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;
>
> (3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;
>
> (4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under

> circumstances indicating an intent to hinder or delay resolution of the dispute;
>
> (5) a balance of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed under Article VI of the Convention, the party seeking enforcement may receive "suitable security" and that, under Article V of the Convention, an award should not be enforced if it is set aside or suspended in the originating country . . . ; and
>
> (6) any other circumstances that could tend to shift the balance in favor of or against adjournment.

*Europcar*, 156 F.3d at 317–18. These factors "balance the Convention's policy favoring confirmation of arbitral awards against the principle of international comity embraced by the Convention." *Novenergia II*, 2020 WL 417794, at *4 (quoting *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1172 (11th Cir. 2004)).

The first and second *Europcar* factors "can be read together to pertain to the timing of foreign proceedings" in light of arbitration's general purpose "to resolve disputes expeditiously." *Cef Energia*, 2020 WL 4219786, at *6. Challenges to the Merits and Quantum Awards remain pending before courts in the Netherlands. Claassens & Verkerk Decl. ¶¶ 4–5. This timing might counsel denying a stay. But if the Court denied a stay and the Dutch courts later set aside either award, "protracted and expensive litigation" would result. *Europcar*, 156 F.3d at 317. Petitioners' emphasis on the "lengthy timeline" of this dispute also falls flat. Stay Resp. 16. The Tribunal issued the Quantum Award only on October 13, 2020. *See* Quantum Award. A stay in this dispute will allow this "integral part" of the arbitration process "to run its course." *CPConstruction Pioneers Baugesellschaft Anstalt (Liechtenstein) v. Republic of Ghana*, 578 F.2d 50, 54

(D.D.C. 2008); *In re Arbitration of Certain Controversies Between Getma Int'l & Republic of Guinea*, 142 F. Supp. 3d 110, 114 (D.D.C. 2015).[6] These factors weigh in favor of a stay.

The third *Europcar* factor relates to the foreign proceedings' standard of review. The "limited scope of review" permitted by the Convention "favors deference to proceedings in the originating country" with less deferential standards of review because "a foreign court well-versed in its own law is better suited to determine the validity of the award." *Europcar*, 156 F.3d at 317 (citation omitted). According to India's Dutch attorneys, Dutch courts "evaluate the existence, validity, and scope of an arbitration agreement *de novo*." Claassens & Dekerk Decl. ¶ 9; *accord Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 72 (D.D.C. 2013). This probing standard of review supports granting a stay. And in any event, the possibility that the Dutch courts will set aside the award "weighs mildly in favor of [granting a] stay." *Getma Int'l*, 142 F. Supp. 3d at 116 (alteration in original) (citation omitted).

The fourth *Europcar* factor requires examining various characteristics of the foreign proceedings. India brought the foreign proceedings to set aside an award, suggesting that the Court should deny a stay and enforce the Tribunal's awards. *See Europcar*, 156 F.3d at 318. But, as petitioners acknowledge, India began the set-aside proceedings years before this present case. Stay

---

[6] The cases on petitioners' side of the ledger do not change the Court's conclusion. In *LLC Komstroy v. Republic of Moldova*, the district court lifted a stay after the case had already been through an "appeal-reversal-remand round" in French courts. No. 1:14-cv-1921 (CRC), 2018 WL 5993437, at *3–4 (D.D.C. Nov. 13, 2018). Here, the parties' direct appeals of their disputes remain pending in Dutch courts. In *Venco Imtiaz Construction Company v. Symbion Power LLC*, the district court emphasized that it "ha[d] no way of knowing whether an appeal in the [foreign] proceeding will be permitted at all, much less how long any appeal might take." No. 1:16-cv-1737 (JDB), 2017 WL 2374349, at *6 (D.D.C. May 31, 2017). Here, the parties have made clear that they intend to appeal decisions to the Supreme Court of the Netherlands. And in *G.E. Transport S.p.A. v. Republic of Albania*, the parties expected an appeal process to continue for four years past the date of the motion. 693 F. Supp. 2d 132, 135 (D.D.C. 2010). Here, the Dutch appeals have proceeded expeditiously, and the parties have given no reason for the Court to expect otherwise.

Resp. 19; Stay Reply 12. Deciding the issues in this present case may require assessing foreign law. *See, e.g.*, Mot. to Dismiss 23–27. Opining on these issues before the conclusion of the foreign set-aside proceedings would disregard *Europcar*'s focus on international comity. *See Getma Int'l*, 142 F. Supp. 3d 116–17 (collecting cases). The Court also cannot find that the set-aside proceedings reveal India's "intent to hinder or delay resolution" of this controversy. *Europcar*, 156 F.3d at 318. Take, for example, India's efforts to annul the Quantum Award. The Tribunal issued the Quantum Award on October 13, 2020. Claassens & Verkerk Decl. ¶ 4. India filed its case seeking review of the Quantum Award on February 5, 2021. *Id.* Petitioners' allegations that India has "harass[ed] and intimidate[d]" them through its actions in the Netherlands and India are of no moment here. Stay Resp. 19. India appears to be pursuing potential remedies in the Netherlands on a timely basis. This factor as a whole weighs in favor of a stay.

The fifth and six *Europcar* factors relate to possible hardships if a stay issues and "any other circumstances" that could counsel for or against a stay. *Europcar*, 156 F.3d at 318. As explained above, India faces the potential hardship of litigating the same issues simultaneously in multiple forums. And any rulings in this Court could be undone if the Dutch courts ultimately set aside the Merits or Quantum Awards. These potential hardships outweigh petitioners' concern that the litigation will be unduly delayed. Principles of international comity further support a stay. Again, "United States courts generally and appropriately defer to the foreign courts selected by the parties . . . to determine relevant issues according to their own law." *Hulley II*, 502 F. Supp. 3d at 157. Interests of "international comity and orderly litigation are best served by imposing a stay" pending final judgment in foreign set-aside proceedings. *Id.* at 158. These factors weigh in favor of a stay.

To sum up, India has shown a "pressing need" to justify staying this case until the Dutch proceedings conclude. *See Belize Soc. Dev't*, 668 F.3d at 733. The interests of judicial economy, international comity, and potential hardship to the parties militate toward granting a stay under the Court's inherent powers. The *Europcar* factors similarly weigh in favor of a stay. This Court will, accordingly, stay these proceedings pending final judgment in the Dutch set-aside proceedings.

### C. The Court Will Not Require India To Post Security

Finally, petitioners ask this Court to order India to post security. Under Article VI of the New York Convention, a court may require a party seeking a stay to post "suitable security." *See* New York Convention art. VI. Petitioners contend that without security, India will engage in "ceaseless attacks" and "mobiliz[ation] of its nominally independent judiciary" to initiate "sham proceedings" miring petitioners and Devas in litigation. *Id.* The Court will not do so. The Court has not decided whether it has jurisdiction over this dispute, so granting security under the Convention would be premature. And regardless of jurisdiction, as plaintiffs concede, courts in this Circuit "[o]rdinarily . . . [do not] require foreign sovereigns to post security." Stay Resp. 25. Foreign sovereigns "are presumably solvent and will comply with legitimate orders issued by courts in this country or in [their home jurisdiction]." *Cef Energia*, 2020 WL 4219786, at *7 (alteration in original) (internal quotation marks omitted) (quoting *Novenergia II*, 2020 WL 417794, at *6). And the Quantum Award includes post-judgment interest to compensate petitioners for any delay. Quantum Award ¶ 663(g)–(h). India shall not be required to post security in this case.

### IV. CONCLUSION

This Court will not short-circuit the pending litigation in the Netherlands by sticking its hands into this dispute. In light of the interest of judicial economy, respect for international comity,

and potential hardship to the parties, the Court will **GRANT** the Republic of India's motion to stay the present case. This present case will be **STAYED** pending further order of the Court. Mindful that indefinite stays are disfavored, *see Belize Soc. Dev't*, 668 F.3d at 733, the Court will enter a separate order this date requiring regular status reports on the proceedings in the Netherlands. Should petitioners prevail in those proceedings, the Court will promptly turn to the merits of this case.

Date: March 24, 2022

Royce C. Lamberth
United States District Judge